UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 CR 10184 PBS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL NO. |
| v. | ) VIOLATIONS: |
| | ) 18 U.S.C. § 1344 (Bank Fraud) |
| MICHAEL W. ALCOTT, | ) 18 U.S.C. § 982 (Forfeiture) |
| Defendant | ) |

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

1. At all times material to this Information, Defendant MICHAEL W. ALCOTT ("ALCOTT") was an individual who resided in Scituate, Massachusetts.

2. At all times material to this Information, ALCOTT was founder and president of Ark Associates, Inc. d/b/a Account Recruiters International ("Ark Associates"). ALCOTT founded Ark Associates in 1999 as a temporary and permanent employment placement firm specializing in employees with business finance backgrounds. Ark Associates' offices were located at 1250 Hancock St., Suite 504S, Quincy, Massachusetts and 25 Corporate Drive, Burlington, Massachusetts. Ark Associates ceased operations on or about July 1, 2003.

### South Shore Savings Bank

3. In or about July 13, 2000, ALCOTT and Ark Associates entered into a lending relationship with South Shore Savings Bank ("South Shore"), a federally insured institution. Specifically, South Shore and Ark Associates entered into a Loan and Security Agreement (the "Line of Credit") establishing a $500,000 line of credit. ALCOTT signed the Line of Credit on behalf of Ark Associates. ALCOTT and his wife were guarantors on the Line of Credit.

4.  Subsequent to the establishment of the Line of Credit, South Shore increased Ark Associates' borrowing limits under the Line of Credit incrementally based upon Ark Associates' performance as reported in Ark Associates' financial statements. On or about June 26, 2001, South Shore increased Ark Associates' borrowing limit to $1 million. On or about January 10, 2002, South Shore again increased Ark Associates' borrowing limit to $1.5 million. On or about August 21, 2002, South Shore increased Ark Associates' borrowing limit to $2.5 million.

5.  South Shore maintained several requirements regarding the Line of Credit. One such requirement was that Ark Associates submit monthly management prepared financial statements and accounts receivable aging information. ALCOTT personally submitted those documents to South Shore.

6.  South Shore also required ALCOTT to submit yearly "review quality" financial statements for Ark Associates. In a "review," an auditor provides limited assurance on an entity's financial statements. As part of a review, an auditor makes some inquiry into client management, accounting practices, internal control structure, and analytical procedures used by the organization.

7.  For the years 2000 and 2001, ALCOTT submitted financial statements to South Shore under the letterhead of Kevin P. Martin & Associates, P.C., a/k/a, KPM ("KPM"), Ten Forbes West, Braintree, Massachusetts. Each of the financial statements ALCOTT submitted for 2000 and 2001 purported to be "review quality." More specifically, each financial statement for 2000 and 2001 was accompanied by a cover letter signed by KPM stating, among other things, that KPM had conducted a review of Ark Associates' financial statements. The financial statements presented Ark Associates as a profitable company.

8.  On or about August 21, 2002, when South Shore approved the increase in Ark Associates' borrowing limit under the Line of Credit from $1.5 million to $2.5 million, South Shore also changed Ark Associates' financial reporting requirements. Specifically, South Shore required Ark Associates to produce "audit quality," as opposed to "review quality," financial statements. An audit is a higher level of scrutiny than a review. As part of an audit, the auditor provides verification of the financial statements' claims and assertions and expresses an opinion on the entity's financials taken as a whole.

9.  At the time South Shore increased Ark Associates' borrowing limit under the Line of Credit to $2.5 million, South Shore told ALCOTT that it wanted to send its accounting firm of Clark Snow & Riley LLP ("Clark") in to perform an audit of Ark Associates. ALCOTT repeatedly stalled the start date of the audit and Clark never performed the audit.

10. ALCOTT, however, did provide to South Shore a 2002 financial statement for Ark Associates. Included in that financial statement was Ark Associates' Statement of Income and Retained Earnings for the Period of January 1, 2002 to December 31, 2002, which showed Ark Associates' 2002 revenue had increased by about 149% over its 2001 revenue.

11. The 2002 financial statement ALCOTT submitted to South Shore also purported to be "audit quality." Accompanying the financial statement was an audit opinion letter, dated May 6, 2003, on KPM letterhead and bearing the name David P. Kane, Partner-Audit Manager ("Kane"). That letter stated:

> In our opinion, the accompanying consolidated balance sheet as of December 31, 2002, and related consolidated statements of income, of stockholders' equity, and of cash flows present fairly, in all material respects, the financial position of Ark Associates, Inc. at December 31, 2002 and the results of their operations and their cash flows for the year ended in conformity with accounting principles generally

3

accepted in the United States of America. These financial statements are the responsibility of the Company's management; our responsibility is to express an opinion on these financial statements based on our audit. We conducted our audit of these statements in accordance with auditing standards generally accepted in the United States of America, which require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial presentation. We believe that our audit provides a reasonable basis for our opinion.

12. At some point, ALCOTT gave South Shore a business card bearing the name of Kane. The card matched the letterhead of KPM.

13. On or about June 13, 2003, South Shore spoke with Kevin P. Martin, Jr. ("Martin"), a certified public accountant and co-owner of KPM. Martin told South Shore that, not only was no one named David Kane employed at his firm, but that the financial statements which were submitted to South Shore and purportedly audited by KPM were not audited by KPM.

14. In fact, KPM did not perform any work for Ark Associates on 2002 matters. Although ALCOTT hired KPM to perform a review of the Ark Associates financial statements for the partial (or "stub") year of 1999 and the full years for 2000 and 2001, when ALCOTT asked Martin for details about KPM possibly performing an audit of Ark Associates' financial statement for 2002, Martin observed that KPM had found continued corporate losses in its previous reviews of Ark Associates' financial statements. Martin communicated to ALCOTT that KPM would have a problem giving a professional opinion that concluded Ark Associates was a "going concern."

15. Not only had KPM not provided an audit opinion on the 2002 financials, but the "reviewed" financials ALCOTT submitted to South Shore were different from those upon which KPM actually performed its review procedures. As the table below demonstrates, the financial statements reviewed by KPM showed Ark Associates suffering losses, whereas the statements ALCOTT submitted to South Shore reported a growing profit:

| Financial Statement Entry | Actual Review by KPM | Submitted to South Shore |
|---|---|---|
| **Calendar Year 2000** | | |
| Service Revenue | $1,359,472 | $1,632,405 |
| Cost of Services | $941,325 | $794,448 |
| Gross Margin | $418,147 | $837,957 |
| | | |
| Net Operating Income/(Loss) Before Income Tax | ($172,697) | $32,436 |
| | | |
| **Calendar Year 2001** | | |
| Service Revenue | $1,214,367 | $5,019,916 |
| Cost of Services | $858,403 | $2,775,172 |
| Gross Margin | $355,964 | $2,244,744 |
| | | |
| Net Operating Income/(Loss) Before Income Tax | ($714,315) | $111,976 |

16. Upon its discovery of ALCOTT's conduct, South Shore exercised its rights under the Line of Credit and seized collateral of Ark Associates.

5

17. At that time, Ark Associates had an outstanding balance owed to South Shore on the Line of Credit of $2,496,485.17. Ark Associates also had an additional outstanding debt to South Shore of approximately $14,000.00.

## COUNT ONE
## Bank Fraud
## 18 U.S.C. § 1344

18.    The United States Attorney re-alleges and incorporates by reference paragraphs 1-17 of this Information and further charges that:

19.    From at least on or about July 13, 2000 through on or about July 1, 2003, the precise dates being unknown to the United States Attorney, the defendant MICHAEL W. ALCOTT, in the District of Massachusetts and elsewhere, knowingly executed, or attempted to execute, a scheme or artifice to defraud South Shore Savings Bank, a financial institution, in violation of 18 U.S.C. § 1344(1).

## FORFEITURE ALLEGATION
### (18 U.S.C. § 982)

Pursuant to 18 U.S.C. § 982(a)(2)(A), as a result of committing one or more of the offenses set forth in Count One of this Information, MICHAEL W. ALCOTT, defendant herein, shall forfeit to the United States any property constituting, or derived from, proceeds he obtained, directly or indirectly, as a result of his violations of 18 U.S.C. § 1344.


MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

_____
Jack W. Pirozzolo
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS June 18, 2004